1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9            FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                     June 2018 Grand Jury

11   UNITED STATES OF AMERICA,          CR 18CR00430 - SJO

12            Plaintiff,                I N D I C T M E N T

13            v.                        [21 U.S.C. § 846: Conspiracy to
                                        Manufacture, Distribute, and
14   GLEN DWIGHT LOVE,                  Possess with Intent to Distribute,
         aka "Big Luck,"                Cocaine Base in the form of Crack
15   DESHAY LEWANN KING,                Cocaine and to Maintain a Drug-
         aka "Shay Bone,"               Involved Premises; 21 U.S.C.
16   CLYDE EARVIN LOVE, JR.,            § 856(a)(1): Maintaining a Drug-
         aka "F Bone,"                  Involved Premises; 21 U.S.C.
17   WILEY VENOY IVORY II,              §§ 841(a)(1), (b)(1)(B)(iii),
         aka "Slim,"                    (b)(1)(C): Possession with Intent
18   TYLER DARON SCOTT,                 to Distribute, and Distribution
         aka "Tyler Daron Scott-        of, Cocaine Base in the Form of
19        Kelly,"                       Crack Cocaine; 18 U.S.C.
         aka "Tweet,"                   §§ 924(c)(1)(A)(i), (c)(1)(C)(i):
20       aka "Bird,"                    Possession of Firearms in
         aka "Lil Corrupt,"             Furtherance of a Drug Trafficking
21   RAYTHEL JAMES BROWN, JR.,          Crime; 18 U.S.C. § 922(g)(1):
         aka "PD Wacc,"                 Felon in Possession of Firearms
22   JOSHUA ARDELL BROWN,               and Ammunition; 21 U.S.C. § 853,
         aka "Lil Shay Bone,"           18 U.S.C. § 924(d), 28 U.S.C.
23   STEVEN RAY EDWARDS,                § 2461(c): Criminal Forfeiture; 18
         aka "Squeeze,"                 U.S.C. § 2(a): Aiding and
24   NATHAN J. GARDNER WASHINGTON,      Abetting]
         aka "Big Hustle,"
25   CARNISHA CONNORS,
         aka "CC,"
26   ANDRE T. BAILEY,
         aka "Face,"
27   DESHAN LOVE,
         aka "Shawny Boy,"

28

DELSHAWN CRAIG JOHNSON,
    aka "Baby C Rag,"
CLIFTON ROSS,
    aka "C Boy," and
RODERICK JAMES AGEE,
    aka "Lurch,"

                Defendants.

The Grand Jury charges:

## GENERAL ALLEGATIONS AND DEFINITIONS

At all times relevant to this Indictment:

1.    Cocaine base, also known as crack cocaine, was a Schedule II narcotic drug controlled substance. Crack cocaine was manufactured or "cooked" by mixing cocaine with baking soda and water, and applying heat either via a microwave or stove to create a solid form. This solid form was then cooled and broken apart into smaller chunks or "rocks" that were then sold to customers.

2.    Because of the highly dangerous and lucrative nature of crack cocaine trafficking, individuals who worked together in the manufacture and distribution of crack cocaine often had established relationships. Many individuals involved in the manufacture and distribution of crack cocaine developed such relationships with other crack cocaine dealers through their membership in, or association with, Los Angeles street gangs, including the 92 Osage Legend Crips ("OLC") street gang, based in Inglewood, California. These street gangs often had a defined territory in which they distributed crack cocaine to customers, and used violence and intimidation, including firearms, to maintain and expand their drug-dealing territories, to protect themselves, their drugs, and their drug proceeds from rival gangs and drug-dealing organizations, and to collect payment from drug customers.

COUNT ONE

[21 U.S.C. § 846]

1.   Paragraphs 1 and 2 of the Introductory Allegations of this
Indictment are re-alleged and incorporated by reference as though
fully set forth herein.

A.   OBJECTS OF THE CONSPIRACY

2.   Beginning on a date unknown to the Grand Jury, but at least
as early as October 2016, and continuing until on or about July 11,
2018, in Los Angeles County, within the Central District of
California, and elsewhere, defendants GLEN DWIGHT LOVE, also known as
("aka") "Big Luck" ("GLEN LOVE"); DESHAY LEWANN KING, aka "Shay Bone"
("KING"); CLYDE EARVIN LOVE, JR., aka "F Bone" ("CLYDE LOVE"); WILEY
VENOY IVORY II, aka "Slim" ("IVORY"); TYLER DARON SCOTT, aka "Tyler
Daron Scott-Kelly," aka "Tweet," aka "Bird," aka "Lil Corrupt"
("SCOTT"); RAYTHEL JAMES BROWN, JR., aka "PD Wacc" ("RAYTHEL BROWN");
JOSHUA ARDELL BROWN, aka "Lil Shay Bone" ("JOSHUA BROWN"); STEVEN RAY
EDWARDS, aka "Squeeze" ("EDWARDS"); NATHAN J. GARDNER WASHINGTON, aka
"Big Hustle" ("WASHINGTON"); CARNISHA CONNORS, aka "CC" ("CONNORS");
ANDRE T. BAILEY, aka "Face" ("BAILEY"); DESHAN LOVE, aka "Shawny Boy"
("DESHAN LOVE"); DELSHAWN CRAIG JOHNSON, aka "Baby C Rag"
("JOHNSON"); CLIFTON ROSS, aka "C Boy" ("ROSS"); and RODERICK JAMES
AGEE, aka "Lurch" ("AGEE"), and others known and unknown to the Grand
Jury, conspired and agreed with each other to knowingly and
intentionally commit the following offenses:

     a.   To manufacture, distribute, and possess with intent to
distribute at least 280 grams of a mixture and substance containing a
detectable amount of cocaine base in the form of crack cocaine, a

1  Schedule II narcotic controlled substance, in violation of Title 21,

2  United States Code, Sections 841(a)(1) and (b)(1)(A)(iii);

3       b.  To manufacture, distribute, and possess with intent to

4  distribute at least 28 grams of a mixture and substance containing a

5  detectable amount of cocaine base in the form of crack cocaine, a

6  Schedule II narcotic controlled substance, in violation of Title 21,

7  United States Code, Sections 841(a)(1) and (b)(1)(B)(iii);

8       c.  To manufacture, distribute, and possess with intent to

9  distribute cocaine base in the form of crack cocaine, a Schedule II

10 narcotic controlled substance, in violation of Title 21, United

11 States Code, Sections 841(a)(1) and (b)(1)(C); and

12      d.  To maintain a drug-involved premises, in violation of

13 Title 21, United States Code, Section 856(a)(1).

14 B.  MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE

15     ACCOMPLISHED

16      3.  The objects of the conspiracy were to be accomplished, in

17 substance, as follows:

18      a.  Defendants GLEN LOVE, KING, CLYDE LOVE, and BAILEY,

19 and others known and unknown to the Grand Jury, would obtain cocaine.

20      b.  Defendants GLEN LOVE, KING, and IVORY, and others

21 known and unknown to the Grand Jury, would maintain premises in which

22 to manufacture, prepare, and package crack cocaine for sale to

23 customers, including the Stop and Shop Market, located at 1041 South

24 Prairie Avenue #8, in the Holly Park Shopping Center in Inglewood,

25 California (the "Shop").

26      c.  Defendants GLEN LOVE and KING, and others known and

27 unknown to the Grand Jury, would manufacture or "cook" crack cocaine

28 inside the Shop.

d. Defendants GLEN LOVE, KING, CLYDE LOVE, IVORY, SCOTT, RAYTHEL BROWN, JOSHUA BROWN, EDWARDS, WASHINGTON, DESHAN LOVE, and AGEE, and others known and unknown to the Grand Jury, would prepare and package crack cocaine inside the Shop for distribution and delivery to customers.

e. Unknown co-conspirators would act as "spotters" to patrol the areas around the Shop and throughout the OLC's drug-dealing territory, and elsewhere, to find crack cocaine customers to sell to, as well as to look out for law enforcement officers and to alert other co-conspirators to their presence.

f. Defendants GLEN LOVE, KING, IVORY, SCOTT, RAYTHEL BROWN, JOSHUA BROWN, WASHINGTON, and DESHAN LOVE, and others known and unknown to the Grand Jury, would receive orders from crack cocaine customers and spotters, including by telephone using coded language, both inside and outside of the Shop.

g. Defendants GLEN LOVE, KING, CLYDE LOVE, IVORY, SCOTT, RAYTHEL BROWN, JOSHUA BROWN, EDWARDS, WASHINGTON, CONNORS, BAILEY, DESHAN LOVE, JOHNSON, ROSS, and AGEE, and others known and unknown to the Grand Jury, would communicate with one another, including by telephone using coded language, to arrange for re-supplies of crack cocaine, to coordinate deliveries of crack cocaine to customers, and to coordinate payments and discuss proceeds from drug sales.

h. Defendants GLEN LOVE, KING, CLYDE LOVE, IVORY, SCOTT, RAYTHEL BROWN, JOSHUA BROWN, EDWARDS, WASHINGTON, CONNORS, BAILEY, DESHAN LOVE, JOHNSON, ROSS, and AGEE, and others known and unknown to the Grand Jury, would pick up crack cocaine from inside the Shop and elsewhere, conceal it on their bodies, including by hiding it in and underneath their clothing and in their body cavities, and would make

crack cocaine deliveries to customers at various common locations within their drug-dealing territory and elsewhere, including the Vons, Clean King Laundromat, CVS, Auto Zone, Pep Boys, Sea Breeze Inn, Best Bargain Grocery Store, Social Security Administration Office, U.S. VETS Office, Holly Crest Hotel, and the Holly Park Shopping Center, as well as various alleys, intersections, and other locations throughout Inglewood, California and elsewhere.

i.    Defendants GLEN LOVE, KING, IVORY, SCOTT, EDWARDS, and WASHINGTON, and others known and unknown to the Grand Jury, would often obtain and possess firearms, both inside and outside of the Shop, and use violence and intimidation in order to maintain and expand their drug-dealing territory, to protect themselves, their drugs, and their drug proceeds from rival drug-dealing organizations, and to collect debts from customers.

C.    OVERT ACTS

4.    On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendants GLEN LOVE, KING, CLYDE LOVE, IVORY, SCOTT, RAYTHEL BROWN, JOSHUA BROWN, EDWARDS, WASHINGTON, CONNORS, BAILEY, DESHAN LOVE, JOHNSON, ROSS, and AGEE, and others unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act No. 1:    On or about December 21, 2016, defendant SCOTT possessed and discarded a loaded firearm while leading police officers in a pursuit through the OLC's drug-dealing territory in Inglewood, California.

Overt Act No. 2:    On or about January 3, 2017, defendant KING sold approximately 1.39 grams of crack cocaine to a confidential

informant working with the Federal Bureau of Investigation ("CI-1")
for $70 in the parking lot of the Holly Park Shopping Center in
Inglewood, California.

Overt Act No. 3:    On or about January 5, 2017, defendant KING
sold approximately 3.32 grams of crack cocaine to CI-1 for $200 in
the parking lot of the Clean King Laundromat in Inglewood,
California.

Overt Act No. 4:    On or about January 10, 2017, defendant KING
sold approximately 13.45 grams of crack cocaine to CI-1 for $500 in
the parking lots of the Vons and the Holly Park Shopping Center in
Inglewood, California.

Overt Act No. 5:    On or about January 20, 2017, defendant KING
sold approximately 13.36 grams of crack cocaine to CI-1 for $500 in
the parking lot of the Vons in Inglewood, California.

Overt Act No. 6:    On or about February 9, 2017, defendant KING
sold approximately 13.19 grams of crack cocaine to CI-1 for $500 in
the parking lot of the Vons in Inglewood, California.

Overt Act No. 7:    On or about April 13, 2017, by telephone
using coded language, defendant KING arranged with an individual
known as "Danny" ("Danny") for a delivery of crack cocaine.

Overt Act No. 8:    On or about April 14, 2017, by telephone
using coded language, defendant KING warned defendant GLEN LOVE of an
increased police presence around the Shop.

Overt Act No. 9:    On or about April 15, 2017, in a series of
telephone calls using coded language, defendant KING arranged for
delivery of crack cocaine to multiple customers in Inglewood,
California.

Overt Act No. 10:   On or about April 15, 2017, defendant KING left the Shop to make deliveries of crack cocaine to customers.

Overt Act No. 11:   On or about April 15, 2017, after leaving the Shop, defendant KING called defendant CLYDE LOVE, who was still inside the Shop, and they discussed how they had mixed up crack cocaine packages meant for delivery to different customers, and defendant KING said he would come back to the Shop to swap deliveries.

Overt Act No. 12:   On or about April 15, 2017, defendant KING returned to the Shop, went inside, and left a short time later to deliver crack cocaine to customers.

Overt Act No. 13:   On or about April 15, 2017, by telephone using coded language, defendant KING discussed providing an unindicted co-conspirator, aka "Spooc" ("Spooc"), with a re-supply of crack cocaine.

Overt Act No. 14:   On or about April 18, 2017, defendant KING delivered crack cocaine to customers in various locations throughout Inglewood, California, including Fir Avenue and Arbor Vitae Street, an alley on Hillcrest Boulevard, and the Social Security Office.

Overt Act No. 15:   On or about April 18, 2017, by telephone using coded language, defendant KING arranged to provide Spooc with a re-supply of crack cocaine at the Shop.

Overt Act No. 16:   On or about April 18, 2017, defendant AGEE and Spooc met defendant KING at the Shop for a re-supply of crack cocaine.

Overt Act No. 17:   On or about April 19, 2017, defendant KING spoke with an unknown individual about acquiring and possessing firearms.

8

Overt Act No. 18:   On or about April 19, 2017, by telephone using coded language, defendant KING arranged for deliveries of crack cocaine to a number of regular customers.

Overt Act No. 19:   On or about April 20, 2017, defendant KING delivered crack cocaine to customers on La Brea Avenue in Inglewood, California.

Overt Act No. 20:   On or about April 20, 2017, defendant RAYTHEL BROWN delivered crack cocaine to a customer in the parking lot of the Vons in Inglewood, California.

Overt Act No. 21:   On or about April 20, 2017, by telephone using coded language, defendant KING and Danny discussed delivery of additional crack cocaine, and Danny told defendant KING that customers like defendant KING's product and to "take care of them so they stick around" as repeat drug customers.

Overt Act No. 22:   On or about April 21, 2017, by telephone using coded language, defendant KING arranged to sell CI-1 three ounces of crack cocaine for delivery on April 24, 2017.

Overt Act No. 23:   On or about April 23, 2017, by telephone using coded language, defendants GLEN LOVE and KING discussed a firearm that they kept in the Shop.

Overt Act No. 24:   On or about April 23, 2017, by telephone using coded language, defendant KING arranged to deliver crack cocaine to a customer at the Social Security Office in Inglewood, California.

Overt Act No. 25:   On or about April 24, 2017, defendant KING met with CI-1 in the parking lot of the Vons in Inglewood, California for the sale of three ounces of crack cocaine, but defendant KING did

1  not bring enough crack cocaine, and told CI-1 that he needed to run
2  back to the Shop to get the rest.

3    Overt Act No. 26:   On or about April 24, 2017, shortly after
4  meeting with CI-1, defendant KING called defendant GLEN LOVE and,
5  using coded language, arranged to pick up additional crack cocaine
6  from the Shop.

7    Overt Act No. 27:   On or about April 24, 2017, after obtaining
8  additional crack cocaine from defendant GLEN LOVE, defendant KING
9  sold approximately two ounces of crack cocaine to CI-1 in the parking
10 lot of the Vons in Inglewood, California for $2,000, and defendant
11 KING told CI-1 that he could get the third ounce that they had
12 previously arranged for later in the day.

13   Overt Act No. 28:   On or about April 26, 2017, in Inglewood,
14 California, defendant IVORY possessed with intent to distribute crack
15 cocaine.

16   Overt Act No. 29:   On or about April 26, 2017, defendant IVORY
17 led police on a pursuit through Inglewood, California, eventually
18 hiding and evading arrest.

19   Overt Act No. 30:   On or about April 27, 2017, by telephone
20 using coded language, defendant KING and a regular narcotics customer
21 discussed money that the customer owed to defendant KING for crack
22 cocaine, and defendant KING agreed to deliver crack cocaine to the
23 customer.

24   Overt Act No. 31:   On or about May 1, 2017, defendants GLEN
25 LOVE and CONNORS delivered crack cocaine to customers at various
26 locations throughout Inglewood, California.

27   Overt Act No. 32:   On or about May 1, 2017, defendants GLEN
28 LOVE, EDWARDS, and AGEE, and other co-conspirators, left the Shop and

10

drove to the Sea Breeze Inn in Inglewood, California (the "Sea Breeze Inn"), a base of operations for the drug-dealing conspiracy.

Overt Act No. 33:   On or about May 2, 2017, using defendant GLEN LOVE's car, defendant CONNORS and an unknown co-conspirator delivered crack cocaine to customers in the parking lot of a Burger King in Inglewood, California.

Overt Act No. 34:   On or about May 2, 2017, defendants GLEN LOVE and CONNORS delivered crack cocaine to a customer near the corner of South Flower Street and 99th Street in Inglewood, California.

Overt Act No. 35:   On or about May 8, 2017, defendant GLEN LOVE and an unindicted co-conspirator delivered crack cocaine to a customer in the parking lot of a CVS on West Century Boulevard in Inglewood, California.

Overt Act No. 36:   On or about May 8, 2017, defendant GLEN LOVE delivered crack cocaine to a customer on South Osage Avenue in Inglewood, California.

Overt Act No. 37:   On or about May 8, 2017, by telephone using coded language, defendants KING and BAILEY arranged for a re-supply of cocaine later in the day.

Overt Act No. 38:   On or about May 8, 2017, by telephone using coded language, defendant BAILEY told defendant KING that defendant BAILEY had acquired a re-supply of cocaine and was on his way to deliver it to the Shop.

Overt Act No. 39:   On or about May 8, 2017, defendant BAILEY delivered a re-supply of cocaine to the Shop, and stayed inside the Shop along with defendants GLEN LOVE, KING, and RAYTHEL BROWN.

1    Overt Act No. 40:   On or about May 8, 2017, after delivery of
2  the re-supply of cocaine, defendant GLEN LOVE and an unindicted co-
3  conspirator left the Shop and drove to the Sea Breeze Inn.

4    Overt Act No. 41:   On or about May 8, 2017, by telephone using
5  coded language, defendant RAYTHEL BROWN warned defendant KING that
6  police officers were present around the Shop.

7    Overt Act No. 42:   On or about May 10, 2017, by telephone using
8  coded language, defendants GLEN LOVE and KING discussed the increased
9  police presence around the Shop, and discussed transferring ownership
10  of the Shop away from defendant IVORY into their own names to lessen
11  the scrutiny and police presence around the Shop.

12    Overt Act No. 43:   On or about May 11, 2017, by telephone using
13  coded language, defendants KING and IVORY discussed finances for the
14  Shop, and defendant KING told defendant IVORY that the Shop did not
15  have a business bank account.

16    Overt Act No. 44:   On or about May 11, 2017, by telephone using
17  coded language, defendant KING arranged for delivery of crack cocaine
18  to customers in a parking lot in Inglewood, California.

19    Overt Act No. 45:   On or about May 11, 2017, by telephone using
20  coded language, defendant KING instructed his girlfriend to have
21  money and crack cocaine ready at their home for defendant KING to
22  pick up.

23    Overt Act No. 46:   On or about May 11, 2017, defendant KING
24  picked up money and crack cocaine from his home.

25    Overt Act No. 47:   On or about May 11, 2017, by telephone using
26  coded language, defendant KING arranged to deliver crack cocaine to
27  customers at the Social Security Office in Inglewood, California.

28

Overt Act No. 48:   On or about May 11, 2017, defendant SCOTT sold crack cocaine to a confidential informant working with the Inglewood Police Department ("CI-2") at the Sea Breeze Inn in Inglewood, California.

Overt Act No. 49:   On or about May 12, 2017, defendant SCOTT possessed with intent to distribute crack cocaine at the Sea Breeze Inn.

Overt Act No. 50:   On or about June 26, 2017, defendants GLEN LOVE and CONNORS delivered crack cocaine to customers in the parking lot of a Burger King in Inglewood, California.

Overt Act No. 51:   On or about July 30, 2017, defendant WASHINGTON was inside the Shop, along with a loaded Taurus PT111 Millennium G2 9mm pistol, bearing serial number TJP77166, approximately 100 rounds of varying caliber ammunition, a scale, baking soda, a plate, and a razor blade.

Overt Act No. 52:   On or about August 2, 2017, defendant GLEN LOVE directed defendant CONNORS to deliver crack cocaine to a customer and to come right back to the Shop without stopping anywhere else.

Overt Act No. 53:   On or about August 2, 2017, defendant GLEN LOVE directed defendant CONNORS to deliver crack cocaine to a customer at an AutoZone in Inglewood, California, and defendant CONNORS left the Shop to make the delivery.

Overt Act No. 54:   On or about August 2, 2017, by telephone using coded language, defendant GLEN LOVE directed customers to go to Flower Street and Hardy Street in Inglewood, California, for deliveries of crack cocaine.

Overt Act No. 55:   On or about August 2, 2017, defendant GLEN LOVE discussed with defendants CLYDE LOVE and WASHINGTON how defendant GLEN LOVE had pulled a firearm on rival gang members to defend his drug-dealing territory.

Overt Act No. 56:   On or about August 2, 2017, defendants CLYDE LOVE and WASHINGTON, and an unindicted co-conspirator, discussed people stealing drugs from them, and defendant CLYDE LOVE said he would kill anyone who stole drugs from him.

Overt Act No. 57:   On or about August 2, 2017, defendants KING, SCOTT, and WASHINGTON discussed attempting to make the Shop look like an actual retail store and getting window signs to tell drug customers and co-conspirators when to avoid going into the Shop.

Overt Act No. 58:   On or about August 2, 2017, defendant SCOTT delivered crack cocaine to a customer at the Holly Park Shopping Center in Inglewood, California.

Overt Act No. 59:   On or about August 3, 2017, by telephone using coded language, defendant RAYTHEL BROWN arranged for delivery of crack cocaine to a customer at the Clean King Laundromat in Inglewood, California.

Overt Act No. 60:   On or about August 3, 2017, defendant GLEN LOVE directed defendant CONNORS to deliver crack cocaine to a customer at a CVS in Inglewood, California.

Overt Act No. 61:   On or about August 3, 2017, defendant CONNORS told defendant GLEN LOVE that she attempted to deliver crack cocaine to the customer at CVS, but called the delivery off because she spotted a police surveillance unit that was watching her.

Overt Act No. 62:   On or about August 3, 2017, by telephone using coded language, defendants GLEN LOVE and IVORY discussed

14

selling crack cocaine at the Sea Breeze Inn and the AutoZone in Inglewood, California.

Overt Act No. 63:   On or about August 4, 2017, defendants GLEN LOVE and WASHINGTON discussed dealing crack cocaine, and defendant WASHINGTON said that he and an unindicted co-conspirator were out dealing the night before.

Overt Act No. 64:   On or about August 4, 2017, defendants GLEN LOVE, RAYTHEL BROWN, and WASHINGTON, and an unindicted co-conspirator, discussed the quantities and weights of drugs sold in San Diego as compared with Los Angeles.

Overt Act No. 65:   On or about August 4, 2017, defendants GLEN LOVE and RAYTHEL BROWN discussed expanding the OLC's drug business and transferring ownership of the Shop away from defendant IVORY to avoid detection by law enforcement.

Overt Act No. 66:   On or about August 4, 2017, defendant GLEN LOVE attempted to deliver crack cocaine to a customer at the Tourist Lodge in Inglewood, California.

Overt Act No. 67:   On or about August 6, 2017, defendants GLEN LOVE and RAYTHEL BROWN discussed increasing OLC membership numbers to better protect and expand the OLC's drug-dealing territory, and defendant GLEN LOVE said that they needed to get their numbers up, and that they already had guns.

Overt Act No. 68:   On or about August 7, 2017, defendant GLEN LOVE directed defendant CONNORS to deliver crack cocaine to a customer at a Burger King in Inglewood, California.

Overt Act No. 69:   On or about August 7, 2017, using defendant GLEN LOVE's car, defendant CONNORS delivered crack cocaine to a

customer in the parking lot of the Burger King in Inglewood, California.

Overt Act No. 70:   On or about August 7, 2017, by telephone using coded language, defendants GLEN LOVE and KING discussed the fact that defendant CONNORS had been pulled over by police following the crack cocaine delivery at Burger King.

Overt Act No. 71:   On or about August 7, 2017, inside the Shop, defendants GLEN LOVE and WASHINGTON discussed the fact that defendant CONNORS had been pulled over by the police, and defendant GLEN LOVE said he hoped the police did not pull apart and search his car.

Overt Act No. 72:   On or about August 9, 2017, by telephone using coded language, defendant WASHINGTON arranged to deliver crack cocaine to a customer at the donut shop in the Holly Park Shopping Center.

Overt Act No. 73:   On or about August 10, 2017, defendants GLEN LOVE, SCOTT, WASHINGTON, and ROSS cooked crack cocaine inside of the Shop, and while cooking, discussed techniques for cooking crack, the consistency and quality of the crack they were cooking, and the various customers to whom they and their co-conspirators sell.

Overt Act No. 74:   On or about August 10, 2017, defendant GLEN LOVE asked defendant JOSHUA BROWN to deliver crack cocaine to a customer at the Burger King in Inglewood, California, and defendant JOSHUA BROWN said he would be right back and then left the Shop.

Overt Act No. 75:   On or about August 15, 2017, defendants GLEN LOVE and CONNORS delivered crack cocaine to a customer in the parking lot of a CVS in Inglewood, California.

Overt Act No. 76:   On or about August 15, 2017, defendants GLEN LOVE and CONNORS delivered crack cocaine to a customer near the

intersection of 99th Street and South Flower Street in Inglewood, California.

Overt Act No. 77:   On or about August 15, 2017, defendants GLEN LOVE and CONNORS delivered crack cocaine to a customer in the parking lot of the Clean King Laundromat in Inglewood, California.

Overt Act No. 78:   On or about August 15, 2017, defendant JOSHUA BROWN and an unindicted co-conspirator delivered crack cocaine to customers in an alley on Manchester Boulevard near the Clean King Laundromat in Inglewood, California.

Overt Act No. 79:   On or about August 22, 2017, defendants GLEN LOVE, KING, and IVORY arranged for ownership of the Shop to be transferred from defendant IVORY to defendants GLEN LOVE and KING.

Overt Act No. 80:   On or about August 23, 2017, by telephone using coded language, defendant SCOTT arranged for delivery of crack cocaine to a customer on Hardy Street in Inglewood, California, and then left the Shop to make the delivery.

Overt Act No. 81:   On or about August 23, 2017, defendants GLEN LOVE and SCOTT searched for a firearm that was kept inside the Shop, and discussed not leaving anything illegal in the Shop.

Overt Act No. 82:   On or about August 23, 2017, defendant GLEN LOVE discussed with an unindicted co-conspirator what they believed were police surveillance units in the area, and defendant GLEN LOVE needing to get an illegal firearm out of the Shop.

Overt Act No. 83:   On or about August 24, 2017, inside the Shop, defendant RAYTHEL BROWN told defendants GLEN LOVE and CLYDE LOVE that he and defendant IVORY had been pulled over by the police while in possession of crack cocaine, but the police did not find it because it was hidden in his rectum.

17

Overt Act No. 84:   On or about August 24, 2017, defendant CLYDE LOVE delivered crack cocaine to a customer in an alley near the Vons in Inglewood, California.

Overt Act No. 85:   On or about August 27, 2017, by telephone using coded language, defendant GLEN LOVE discussed with defendant CLYDE LOVE a re-supply of four kilograms of cocaine.

Overt Act No. 86:   On or about August 28, 2017, defendant GLEN LOVE arranged for delivery of crack cocaine to a customer at the Burger King in Inglewood, California.

Overt Act No. 87:   On or about August 28, 2017, defendants GLEN LOVE, SCOTT, and an unknown co-conspirator discussed the use of firearms and violence to control and protect the OLC's drug-dealing territory from rivals.

Overt Act No. 88:   On or about August 28, 2017, defendant GLEN LOVE delivered crack cocaine to a customer in the parking lot of the Holly Park Shopping Center in Inglewood, California.

Overt Act No. 89:   On or about August 31, 2017, defendant JOSHUA BROWN delivered crack cocaine to a customer at the Holly Park Shopping Center in Inglewood, California.

Overt Act No. 90:   On or about August 31, 2017, defendants RAYTHEL BROWN and WASHINGTON delivered crack cocaine to customers near Hillcrest Boulevard and Kelso Street in Inglewood, California.

Overt Act No. 91:   On or about August 31, 2017, defendants RAYTHEL BROWN and WASHINGTON delivered crack cocaine to a customer on Manchester Boulevard between Spruce Avenue and Tamarack Avenue in Inglewood, California.

Overt Act No. 92:   On or about August 31, 2017, defendants RAYTHEL BROWN and WASHINGTON delivered crack cocaine to a customer at

an alley behind the Pep Boys near Spruce Avenue and La Palma Drive in Inglewood, California.

Overt Act No. 93:   On or about August 31, 2017, defendant CLYDE LOVE delivered crack cocaine to a customer in the parking lot of Clean King Laundromat in Inglewood, California.

Overt Act No. 94:   On or about September 20, 2017, defendant GLEN LOVE possessed a firearm inside the Shop.

Overt Act No. 95:   On or about September 20, 2017, defendant GLEN LOVE packaged crack cocaine inside the Shop for delivery to customers, and, while packaging, defendant GLEN LOVE discussed with defendant BAILEY money that he owed defendant BAILEY for cocaine.

Overt Act No. 96:   On or about September 20, 2017, by telephone using coded language, and while packaging crack cocaine inside the Shop, defendant GLEN LOVE arranged to deliver crack cocaine to customers in Inglewood, California.

Overt Act No. 97:   On or about September 21, 2017, defendants GLEN LOVE and RAYTHEL BROWN were in the Shop as defendant GLEN LOVE packaged crack cocaine for delivery to customers.

Overt Act No. 98:   On or about September 21, 2017, defendants GLEN LOVE and EDWARDS packaged crack cocaine inside the Shop for delivery to customers.

Overt Act No. 99:   On or about September 21, 2017, by telephone using coded language, defendant GLEN LOVE arranged for a re-supply of cocaine.

Overt Act No. 100:   On or about September 21, 2017, defendant JOSHUA BROWN delivered a re-supply of cocaine to the Shop, and he and defendant GLEN LOVE then packaged crack cocaine in the Shop for

1   delivery to customers, while defendants KING and CONNORS were in the

2   Shop.

3       Overt Act No. 101:  On or about September 22, 2017, by telephone

4   using coded language, defendant GLEN LOVE arranged for delivery of

5   crack cocaine to customers in Inglewood, California.

6       Overt Act No. 102:  On or about September 22, 2017, inside the

7   Shop, defendants SCOTT, RAYTHEL BROWN, EDWARDS, JOHNSON, and AGEE

8   discussed the increased police presence in their drug-dealing

9   territory and the best locations to deliver narcotics to customers to

10  avoid detection by law enforcement.

11      Overt Act No. 103:  On or about September 22, 2017, defendant

12  SCOTT packaged crack cocaine inside the Shop for delivery to

13  customers, placed a bag of crack cocaine in the backside of his

14  pants, and then left the Shop with defendants EDWARDS and AGEE.

15      Overt Act No. 104:  On or about September 22, 2017, defendants

16  GLEN LOVE and SCOTT packaged crack cocaine inside the Shop for

17  delivery to customers, and, while packaging, they discussed using

18  violence against a woman who they believed was interfering with their

19  drug-dealing business.

20      Overt Act No. 105:  On or about September 22, 2017, inside the

21  Shop, defendants GLEN LOVE and SCOTT discussed using violence and

22  intimidation to collect on drug debts.

23      Overt Act No. 106:  On or about September 23, 2017, defendant

24  ROSS arrived at the Shop for a re-supply of crack cocaine, gave

25  defendant GLEN LOVE cash, and told him that defendants ROSS and

26  JOSHUA BROWN were out the prior night selling crack cocaine.

27

28

Overt Act No. 107: On or about September 23, 2017, by telephone using coded language, defendant RAYTHEL BROWN arranged for the sale of crack cocaine to a regular customer.

Overt Act No. 108: On or about September 23, 2017, defendants KING and CLYDE LOVE cooked and packaged crack cocaine in the Shop for delivery to customers.

Overt Act No. 109: On or about September 24, 2017, defendant GLEN LOVE packaged crack cocaine in the Shop for delivery to customers, and defendants CLYDE LOVE and JOSHUA BROWN joined him in the Shop a short time later.

Overt Act No. 110: On or about September 26, 2017, defendant CLYDE LOVE packaged crack cocaine in the Shop for delivery to customers, while defendant EDWARDS sat by his side counting cash, and CLYDE LOVE placed a bag of crack cocaine in the backside of his pants and left the Shop.

Overt Act No. 111: On or about September 26, 2017, defendant GLEN LOVE packaged crack cocaine in the Shop for delivery to customers.

Overt Act No. 112: On or about September 26, 2017, defendant EDWARDS packaged crack cocaine in the Shop for delivery to customers, and when he was done packaging, placed a bag of crack cocaine in the backside of his pants and left the Shop.

Overt Act No. 113: On or about September 26, 2017, defendant GLEN LOVE packaged crack cocaine inside the Shop and handed a re-supply of crack cocaine to defendant WASHINGTON, who then left the Shop while defendant GLEN LOVE continued to package.

1    Overt Act No. 114:  On or about September 26, 2017, defendants
2    GLEN LOVE and IVORY packaged crack cocaine in the Shop for delivery
3    to customers.

4    Overt Act No. 115:  On or about September 28, 2017, defendants
5    CLYDE LOVE and EDWARDS packaged crack cocaine in the Shop for
6    delivery to customers.

7    Overt Act No. 116:  On or about September 29, 2017, inside the
8    Shop, defendants GLEN LOVE and IVORY discussed carrying and using
9    firearms in furtherance of their drug-trafficking business, and
10   defendant IVORY packaged crack cocaine for delivery to customers.

11   Overt Act No. 117:  On or about September 29, 2017, defendant
12   GLEN LOVE delivered crack cocaine to customers at the Holly Park
13   Shopping Center in Inglewood, California.

14   Overt Act No. 118:  On or about September 29, 2017, defendant
15   EDWARDS arrived at the Shop, removed a bag of crack cocaine from the
16   backside of his pants, counted the crack cocaine rocks, re-wrapped
17   them in a plastic baggie, and then placed the baggie back in the
18   backside of his pants.

19   Overt Act No. 119:  On or about September 29, 2017, defendant
20   IVORY delivered crack cocaine to a customer in the Holly Park
21   Shopping Center in Inglewood, California.

22   Overt Act No. 120:  On or about September 30, 2017, defendants
23   GLEN LOVE and JOSHUA BROWN packaged crack cocaine in the Shop for
24   delivery to customers, and defendant GLEN LOVE placed a baggie in the
25   backside of his pants, received a call, left the Shop, and delivered
26   crack cocaine to a customer in a car in the Holly Park Shopping
27   Center in Inglewood, California.

28

Overt Act No. 121:   On or about September 30, 2017, defendant CLYDE LOVE packaged crack cocaine in the Shop for delivery to customers.

Overt Act No. 122:   On or about September 30, 2017, defendant SCOTT delivered crack cocaine to a customer at the Holly Park Shopping Center in Inglewood, California.

Overt Act No. 123:   On or about September 30, 2017, defendant AGEE packaged crack cocaine in the Shop for delivery to customers.

Overt Act No. 124:   On or about October 1, 2017, defendants GLEN LOVE and CLYDE LOVE packaged crack cocaine in the Shop for delivery to customers, and defendant GLEN LOVE received a call from a crack cocaine customer and left the Shop, while defendant CLYDE LOVE continued to package and then left the Shop a short time later.

Overt Act No. 125:   On or about October 1, 2017, defendants GLEN LOVE, IVORY, and EDWARDS packaged crack cocaine in the Shop for delivery to customers, and, while packaging, discussed how much money they were making selling drugs.

Overt Act No. 126:   On or about October 1, 2017, while packaging crack cocaine in the Shop, defendants GLEN LOVE, IVORY, and EDWARDS possessed and discussed a Beretta pistol.

Overt Act No. 127:   On or about October 2, 2017, defendants GLEN LOVE and IVORY packaged crack cocaine in the Shop for delivery to customers, and, while they packaged, an unknown co-conspirator arrived and handed defendant GLEN LOVE cash.

Overt Act No. 128:   On or about October 3, 2017, while packaging crack cocaine in the Shop for delivery to customers, defendant SCOTT received a call from a customer, told the customer to meet him at the smoke shop next to the Shop in the Holly Park Shopping Center, placed

a baggie in the backside of his pants, went outside, and delivered crack cocaine to customers in the parking lot.

Overt Act No. 129: On or about October 3, 2017, defendant IVORY packaged crack cocaine in the Shop for delivery to customers.

Overt Act No. 130: On or about October 4, 2017, defendant EDWARDS arrived at the Shop for a re-supply of crack cocaine, which defendant GLEN LOVE provided and told defendant EDWARDS to pay for the re-supply when he got money from customers.

Overt Act No. 131: On or about October 4, 2017, by telephone using coded language, defendant GLEN LOVE arranged for delivery of crack cocaine to a customer on 99th Street in Inglewood, California.

Overt Act No. 132: On or about October 4, 2017, while inside the Shop, defendant GLEN LOVE asked defendant EDWARDS to buy some razors to use for preparing crack cocaine, and defendants GLEN LOVE and DESHAN LOVE then discussed the ways to use blades and sharp objects to best break up crack cocaine into rocks for sale to customers.

Overt Act No. 133: On or about October 4, 2017, while packaging crack cocaine in the Shop, defendants GLEN LOVE, DESHAN LOVE, and EDWARDS discussed the drug-dealing skills of defendant JOSHUA BROWN, the prices they charge customers for crack cocaine, use of violence and intimidation to collect payment from customers, and providing crack cocaine to a customer who believed he was buying methamphetamine.

Overt Act No. 134: On or about October 4, 2017, by telephone using coded language, defendant GLEN LOVE arranged for delivery of crack cocaine to customers, then left the Shop, drove to the Burger

1  King in Inglewood, California, and delivered crack cocaine to
2  customers.

3      Overt Act No. 135:  On or about October 4, 2017, defendants
4  JOSHUA BROWN and EDWARDS, and an unindicted co-conspirator, left the
5  Shop and drove to the AutoZone in Inglewood, California, where they
6  delivered crack cocaine to customers in the parking lot.

7      Overt Act No. 136:  On or about October 4, 2017, defendants GLEN
8  LOVE, CLYDE LOVE, and EDWARDS packaged crack cocaine in the Shop for
9  delivery to customers.

10     Overt Act No. 137:  On or about October 5, 2017, defendants GLEN
11 LOVE, IVORY, and EDWARDS packaged crack cocaine in the Shop for
12 delivery to customers.

13     Overt Act No. 138:  On or about October 5, 2017, defendant GLEN
14 LOVE packaged crack cocaine in the Shop for delivery to customers,
15 then received a call from a customer, placed a bag of crack cocaine
16 in the backside of his pants, and left the Shop to deliver to
17 customers.

18     Overt Act No. 139:  On or about October 5, 2017, defendant SCOTT
19 packaged crack cocaine in the Shop for delivery to customers.

20     Overt Act No. 140:  On or about October 5, 2017, by telephone
21 using coded language, defendant RAYTHEL BROWN arranged for delivery
22 of crack cocaine to a customer in an alley in Inglewood, California.

23     Overt Act No. 141:  On or about October 5, 2017, defendant SCOTT
24 packaged crack cocaine in the Shop for delivery to customers, then
25 placed a bag of crack cocaine in the backside of his pants and left
26 the Shop.

27

28

Overt Act No. 142:  On or about October 5, 2017, defendants GLEN LOVE, SCOTT, RAYTHEL BROWN, and JOSHUA BROWN packaged crack cocaine in the Shop for delivery to customers.

Overt Act No. 143:  On or about October 7, 2017, defendant GLEN LOVE delivered crack cocaine to a customer at the corner of South Flower and East 99th Street in Inglewood, California.

Overt Act No. 144:  On or about October 8, 2017, defendants GLEN LOVE and SCOTT packaged crack cocaine inside the Shop for delivery to customers.

Overt Act No. 145:  On or about October 9, 2017, defendant JOSHUA BROWN delivered crack cocaine to a customer in the parking lot of the Holly Park Shopping Center in Inglewood, California.

Overt Act No. 146:  On or about October 9, 2017, inside the Shop, defendant GLEN LOVE asked defendant JOSHUA BROWN to weigh 25 half-gram doses of crack cocaine, and to put six or seven aside for him, and then left the Shop while defendant JOSHUA BROWN continued to package crack cocaine inside the Shop.

Overt Act No. 147:  On or about October 9, 2017, while defendant JOSHUA BROWN was packaging inside the Shop, defendant SCOTT arrived, removed a bag of crack cocaine from the backside of his pants, examined his inventory, and put the bag back into his backside.

Overt Act No. 148:  On or about October 9, 2017, defendant JOSHUA BROWN and an unindicted co-conspirator delivered crack cocaine to a customer at the Holly Crest Hotel in Inglewood, California.

Overt Act No. 149:  On or about October 9, 2017, defendant AGEE packaged crack cocaine inside the Shop for delivery to customers, and, when done packaging, defendants AGEE and EDWARDS left the Shop.

Overt Act No. 150:  On or about October 9, 2017, defendant IVORY packaged crack cocaine inside the Shop for delivery to customers.

Overt Act No. 151:  On or about October 10, 2017, by telephone using coded language, defendant GLEN LOVE arranged to deliver crack cocaine to a customer, told defendant ROSS that he had forgotten about the customer, and then told defendant IVORY and an unknown co-conspirator to make the delivery and to come right back.  Defendant IVORY and the unknown co-conspirator left the Shop in defendant GLEN LOVE's van to make the delivery, and returned to the Shop a short time later.

Overt Act No. 152:  On or about October 10, 2017, defendants GLEN LOVE and IVORY packaged crack cocaine in the Shop for delivery to customers, and, while packaging, discussed making the Shop look more professional to avoid detection of their drug-dealing business by law enforcement.

Overt Act No. 153:  On or about October 11, 2017, defendants RAYTHEL BROWN and JOHNSON delivered crack cocaine to a customer in an alley behind the Pep Boys in Inglewood, California.

Overt Act No. 154:  On or about October 11, 2017, defendant IVORY paid defendant GLEN LOVE for a re-supply of crack cocaine, and then packaged crack cocaine in the Shop for delivery to customers.

Overt Act No. 155:  On or about October 11, 2017, defendants RAYTHEL BROWN and JOHNSON delivered crack cocaine to a customer at U.S. VETS on Hindry Avenue in Inglewood, California.

Overt Act No. 156:  On or about October 11, 2017, defendant JOSHUA BROWN and an unindicted co-conspirator arrived at the Shop for a re-supply of crack cocaine, and, while inside, defendant JOSHUA BROWN packaged crack cocaine for delivery to customers.

Overt Act No. 157:  On or about October 11, 2017, defendant JOSHUA BROWN and an unindicted co-conspirator delivered crack cocaine to customers at various locations throughout Inglewood, California, including the parking lots of Red Carpet Party Rentals and Smoke Shop, Burger King, and Vons.

Overt Act No. 158:  On or about October 12, 2017, defendants GLEN LOVE and JOSHUA BROWN packaged crack cocaine inside the Shop for delivery to customers.

Overt Act No. 159:  On or about October 12, 2017, defendant GLEN LOVE packaged crack cocaine in the Shop for delivery to customers.

Overt Act No. 160:  On or about October 13, 2017, defendants GLEN LOVE, IVORY, SCOTT, and DESHAN LOVE discussed the police presence around the Shop and how the police were preventing them from making their crack cocaine deliveries to customers, and then shortly after the police left the area, they all left the Shop.

Overt Act No. 161:  On or about October 13, 2017, inside the Shop, defendant GLEN LOVE placed a baggie of crack cocaine in the backside of his pants and left the Shop.

Overt Act No. 162:  On or about October 13, 2017, on separate occasions, defendants GLEN LOVE, IVORY, SCOTT and JOSHUA BROWN packaged crack cocaine in the Shop for delivery to customers.

Overt Act No. 163:  On or about October 13, 2017, defendant KING cooked and packaged crack cocaine in the Shop, and left the Shop a short time later.

Overt Act No. 164:  On or about October 14, 2017, defendant GLEN LOVE packaged crack cocaine in the Shop for delivery to customers.

Overt Act No. 165:  On or about October 14, 2017, defendant JOSHUA BROWN arrived at the Shop for a re-supply of crack cocaine,

28

counted cash and handed it to defendant GLEN LOVE, and then left the Shop and drove away with an unindicted co-conspirator, while defendant GLEN LOVE continued to package crack cocaine, and then placed a bag of crack cocaine in the backside of his pants.

Overt Act No. 166: On or about October 14, 2017, defendant JOSHUA BROWN and an unindicted co-conspirator returned to the Shop, where defendant JOSHUA BROWN removed a bag from the backside of his shorts, packaged crack cocaine for delivery to customers, and, when he finished, put the bag back into the backside of his shorts and he and the unindicted co-conspirator left the Shop.

Overt Act No. 167: On or about October 14, 2017, defendant GLEN LOVE packaged crack cocaine inside the Shop for delivery to customers.

Overt Act No. 168: On or about October 15, 2017, while packaging crack cocaine in the Shop for delivery to customers, defendant GLEN LOVE received a call and arranged for delivery of crack cocaine to a customer on 99th Street in Inglewood, California, and then left the Shop a short time later.

Overt Act No. 169: On or about October 15, 2017, defendant KING cooked crack cocaine inside the Shop for delivery to customers, and, while cooking, received calls from customers, said he would be on his way in a few minutes, and then finished cooking and left the Shop.

Overt Act No. 170: On or about October 15, 2017, defendants GLEN LOVE and JOSHUA BROWN discussed money defendant JOSHUA BROWN owed defendant GLEN LOVE, and then weighed and packaged crack cocaine for delivery to customers.

Overt Act No. 171: On or about October 17, 2017, defendant JOSHUA BROWN and an unindicted co-conspirator delivered crack cocaine

29

1  to a customer near Spruce Avenue and La Brea Avenue in Inglewood,
2  California.

3      Overt Act No. 172:  On or about October 17, 2017, defendant KING
4  cooked crack cocaine inside the Shop for delivery to customers.

5      Overt Act No. 173:  On or about October 17, 2017, defendants
6  GLEN LOVE, IVORY, and SCOTT packaged crack cocaine inside the Shop
7  for delivery to customers.

8      Overt Act No. 174:  On or about October 18, 2017, defendant GLEN
9  LOVE and an unknown co-conspirator packaged crack cocaine in the Shop
10  for delivery to customers.

11      Overt Act No. 175:  On or about October 18, 2017, defendant KING
12  cooked and packaged crack cocaine inside the Shop, and, at various
13  times while defendant KING was cooking, defendants GLEN LOVE and
14  RAYTHEL BROWN assisted in cooking and weighing the crack cocaine.
15  When done cooking, defendant KING left the Shop and drove to the Vons
16  in Inglewood, California.

17      Overt Act No. 176:  On or about October 18, 2017, defendant KING
18  sold approximately 75.56 grams of crack cocaine to CI-1 for $2800 in
19  the parking lot of the Vons in Inglewood, California.

20      Overt Act No. 177:  On or about October 18, 2017, after
21  delivering crack cocaine to CI-1, defendant KING delivered crack
22  cocaine to a customer, also in the parking lot of the Vons in
23  Inglewood, California.

24      Overt Act No. 178:  On or about October 18, 2017, defendant
25  CLYDE LOVE packaged crack cocaine inside the Shop for delivery to
26  customers, and when defendant KING returned to the Shop after selling
27  crack cocaine to CI-1, he handed defendant CLYDE LOVE money.

28

1    Overt Act No. 179:  On or about October 18, 2017, while
2  defendants GLEN LOVE, IVORY, SCOTT, and JOHNSON discussed seeing
3  police surveillance units while delivering drugs to customers,
4  defendant JOHNSON said that he spotted police surveillance while he
5  and defendant RAYTHEL BROWN delivered to a customer at U.S. VETS in
6  Inglewood, California, and said that if he had not done the deal
7  hidden behind a car door, the police might have obtained photographs
8  of him.

9    Overt Act No. 180:  On or about October 18, 2017, defendant GLEN
10  LOVE packaged crack cocaine in the Shop for delivery to customers,
11  and, while packaging, received a call from a customer and told
12  defendant RAYTHEL BROWN to make a delivery to a customer at Vons.
13  Defendants RAYTHEL BROWN and JOHNSON then left the Shop to make the
14  delivery.

COUNT TWO

[21 U.S.C. § 856(a)(1)]

Beginning on an unknown date, but at least as early as October 2016, and continuing to on or about July 11, 2018, in Los Angeles County, within the Central District of California, defendants GLEN DWIGHT LOVE, also known as ("aka") "Big Luck," DESHAY LEWANN KING, aka "Shay Bone," and WILEY VENOY IVORY, II, aka "Slim," knowingly and intentionally used and maintained a place, that is, a storefront located at 1041 South Prairie Avenue #8, in the Holly Park Shopping Center in Inglewood, California, for the purpose of manufacturing and distributing a controlled substance, namely, cocaine base in the form of crack cocaine, a Schedule II narcotic drug controlled substance.

COUNT THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about January 3, 2017, in Los Angeles County, within the Central District of California, defendant DESHAY LAWANN KING, also known as "Shay Bone," knowingly and intentionally distributed cocaine base in the form of crack cocaine, a Schedule II narcotic drug controlled substance.

COUNT FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about January 5, 2017, in Los Angeles County, within the Central District of California, defendant DESHAY LAWANN KING, also known as "Shay Bone," knowingly and intentionally distributed cocaine base in the form of crack cocaine, a Schedule II narcotic drug controlled substance.

34

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about January 10, 2017, in Los Angeles County, within the Central District of California, defendant DESHAY LAWANN KING, also known as "Shay Bone," knowingly and intentionally distributed cocaine base in the form of crack cocaine, a Schedule II narcotic drug controlled substance.

COUNT SIX

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about January 20, 2017, in Los Angeles County, within the Central District of California, defendant DESHAY LAWANN KING, also known as "Shay Bone," knowingly and intentionally distributed cocaine base in the form of crack cocaine, a Schedule II narcotic drug controlled substance.

COUNT SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about February 9, 2017, in Los Angeles County, within the Central District of California, defendant DESHAY LAWANN KING, also known as "Shay Bone," knowingly and intentionally distributed cocaine base in the form of crack cocaine, a Schedule II narcotic drug controlled substance.

COUNT EIGHT

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about April 24, 2017, in Los Angeles County, within the Central District of California, defendant GLEN DWIGHT LOVE, also known as "Big Luck," knowingly and intentionally distributed cocaine base in the form of crack cocaine, a Schedule II narcotic drug controlled substance.

COUNT NINE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)]

On or about April 24, 2017, in Los Angeles County, within the Central District of California, defendant DESHAY LAWANN KING, also known as "Shay Bone," knowingly and intentionally distributed at least 28 grams, that is, approximately 53.64 grams, of a mixture and substance containing a detectable amount of cocaine base in the form of crack cocaine, a Schedule II narcotic drug controlled substance.

1

COUNT TEN

2

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

3

On or about April 26, 2017, in Los Angeles County, within the

4

Central District of California, defendant WILEY VENOY IVORY, JR.,

5

also known as "Slim," knowingly and intentionally possessed with

6

intent to distribute cocaine base in the form of crack cocaine, a

7

Schedule II narcotic drug controlled substance.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT ELEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B), 18 U.S.C. § 2(a)]

On or about October 18, 2017, in Los Angeles County, within the Central District of California, defendants GLEN DWIGHT LOVE, also known as ("aka") "Big Luck," and DESHAY LAWANN KING, aka "Shay Bone," each aiding and abetting the other, knowingly and intentionally distributed at least 28 grams, that is, approximately 75.56 grams, of a mixture and substance containing a detectable amount of cocaine base in the form of crack cocaine, a Schedule II narcotic drug controlled substance.

COUNT TWELVE

[18 U.S.C. § 924(c)(1)(A)(i); 18 U.S.C. § 2(a)]

On or about July 30, 2017, in Los Angeles County, within the Central District of California, defendants GLEN DWIGHT LOVE, also known as ("aka") "Big Luck," DESHAY LEWANN KING, aka "Shay Bone," and WILEY VENOY IVORY II, aka "Slim," each aiding and abetting the other, knowingly possessed a firearm, namely, a Taurus PT111 Millennium G2 9mm pistol, bearing serial number TJP77166, in furtherance of a drug trafficking crime, namely, conspiracy to manufacture, distribute, and possess with intent to distribute cocaine base in the form of crack cocaine, in violation of Title 21, United States Code, Section 846, as charged in Count One of this Indictment, and maintaining a drug-involved premises, in violation of Title 21, United States Code, Section 856, as charged in Count Two of this Indictment.

COUNT THIRTEEN

[18 U.S.C. § 924(c)(1)(A)(i)]

On or about September 20, 2017, in Los Angeles County, within the Central District of California, defendant GLEN DWIGHT LOVE, also known as "Big Luck," knowingly possessed a firearm in furtherance of a drug trafficking crime, namely, conspiracy to manufacture, distribute, and possess with intent to distribute cocaine base in the form of crack cocaine, in violation of Title 21, United States Code, Section 846, as charged in Count One of this Indictment, and maintaining a drug-involved premises, in violation of Title 21, United States Code, Section 856, as charged in Count Two of this Indictment.

COUNT FOURTEEN

[18 U.S.C. § 924(c)(1)(A)(i); 18 U.S.C. § 2(a)]

On or about October 1, 2017, in Los Angeles County, within the Central District of California, defendants GLEN DWIGHT LOVE, also known as ("aka") "Big Luck," WILEY VENOY IVORY II, aka "Slim," and STEVEN RAY EDWARDS, aka "Squeeze," each aiding and abetting the other, knowingly possessed a firearm, namely, a Beretta pistol, in furtherance of a drug trafficking crime, namely, conspiracy to manufacture, distribute, and possess with intent to distribute cocaine base in the form of crack cocaine, in violation of Title 21, United States Code, Section 846, as charged in Count One of this Indictment.

COUNT FIFTEEN

[18 U.S.C. § 922(g)(1)]

On or about December 21, 2016, in Los Angeles County, within the Central District of California, defendant TYLER DARON SCOTT, also known as ("aka") "Tyler Daron Scott-Kelly," aka "Tweet," aka "Bird," aka "Lil Corrupt" ("SCOTT") knowingly possessed a firearm, namely, a Smith and Wesson SW9G model 9mm pistol, bearing serial number PBH2600, and ten rounds of 9mm ammunition of varying brands, in and affecting interstate and foreign commerce.

Such possession occurred after defendant SCOTT had been convicted of a felony crime punishable by a term of imprisonment exceeding one year, namely, Assault with a Deadly Weapon other than a Firearm, in violation of California Penal Code Section 245(a)(1), in the Superior Court for the State of California, County of Los Angeles, case number YA067309, on or about February 9, 2009.

COUNT SIXTEEN

[18 U.S.C. § 922(g)(1); 18 U.S.C. § 2(a)]

On or about July 30, 2017, in Los Angeles County, within the Central District of California, defendants GLEN DWIGHT LOVE, also known as "Big Luck" ("GLEN LOVE"), DESHAY LEWANN KING, aka "F Bone" ("KING"), and WILEY VENOY IVORY II, aka "Slim" ("IVORY"), each aiding and abetting the other, knowingly possessed a firearm, namely, a Taurus PT111 Millennium G2 9mm pistol, bearing serial number LF65358, loaded with 17 rounds of 9mm ammunition of varying brands, and approximately 159 additional rounds ammunition of varying caliber and brands, in and affecting interstate and foreign commerce.

Such possession occurred after defendant GLEN LOVE had been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

1.    Robbery, in violation of California Penal Code Section 211, in the Superior Court for the State of California, County of Los Angeles, case number TA019416, on or about October 6, 1992;

2.    Grand Theft Vehicle, in violation of California Penal Code Section 487h(a), in the Superior Court for the State of California, County of Los Angeles, case number TA019416, on or about October 6, 1992;

3.    Possession of Cocaine Base for Sale, in violation of California Health and Safety Code Section 11351.5, in the Superior Court for the State of California, County of Los Angeles, case number YA027851, on or about July 16, 1996;

4.    Possession of Narcotic Controlled Substance, in violation of California Health and Safety Code Section 11350(a), in the

1  Superior Court for the State of California, County of Los Angeles,

2  case number YA042289, on or about March 6, 2000;

3      5.   Bank Robbery, in violation of Title 18, United States Code,

4  Section 2113, in the United States District Court for the Central

5  District of California, case number 01-CR-0017-DOC, on or about June

6  24, 2004; and

7      6.   Possession of Cocaine Base for Sale, in violation of

8  California Health and Safety Code Section 11351.5, in the Superior

9  Court for the State of California, County of San Bernardino, case

10  number FSB801847, on or about February 22, 2010.

11     Such possession occurred after defendant KING had been convicted

12  of at least one of the following felony crimes, each punishable by a

13  term of imprisonment exceeding one year:

14     1.   Possession of Narcotic Controlled Substance, in violation

15  of California Health and Safety Code Section 11350(a), in the

16  Superior Court for the State of California, County of Los Angeles,

17  case number YA029866, on or about November 6, 1996;

18     2.   Possession of Narcotic Controlled Substance, in violation

19  of California Health and Safety Code Section 11350(a), in the

20  Superior Court for the State of California, County of Los Angeles,

21  case number YA034867, on or about December 23, 1997; and

22     3.   Felon in Possession of Firearm, in violation of California

23  Penal Code Section 12021(a)(1), in the Superior Court for the State

24  of California, County of Los Angeles, case number YA062926, on or

25  about May 7, 2007.

26     Such possession occurred after defendant IVORY had been

27  convicted of at least one of the following felony crimes, each

28  punishable by a term of imprisonment exceeding one year:

1.   Carrying a Concealed Weapon, in violation of California Penal Code Section 12025(a)(2), in the Superior Court for the State of California, County of Los Angeles, case number SA051438, on or about February 10, 2004;

2.   Driving Under the Influence, in violation of California Vehicle Code Section 23153(a), in the Superior Court for the State of California, County of Los Angeles, case number YA061684, on or about August 9, 2005;

3.   Evading a Peace Officer with Wanton Disregard for the Safety of Persons or Property, in violation of California Vehicle Code Section 2800.2(a), in the Superior Court for the State of California, County of Los Angeles, case number YA061684, on or about August 9, 2005;

4.   Transportation, Importation, or Sale of Marijuana, in violation of California Health and Safety Code Section 11360(a), in the Superior Court for the State of California, County of Los Angeles, case number YA061684, on or about August 9, 2005;

5.   Prisoner Possessing a Weapon, in violation of California Penal Code Section 4502(a), in the Superior Court for the State of California, County of Los Angeles, case number BA377748, on or about July 19, 2011; and

6.   Identity Theft, in violation of California Penal Code Section 530.5(a), in the Superior Court for the State of California, County of Los Angeles, case number SA090205, on or about May 14, 2015.

FORFEITURE ALLEGATION ONE

[21 U.S.C. § 853]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal
Procedure, notice is hereby given that the United States will seek
forfeiture as part of any sentence, in accordance with Title 21,
United States Code, Section 853, in the event of any defendant's
conviction under any of Counts One through Fourteen of this
Indictment.  Each defendant so convicted shall forfeit to the United
States the following property:

          a.    All right, title and interest in any and all property
constituting, or derived from, any proceeds such defendant obtained,
directly or indirectly, as a result of any such offense; and

          b.    any of such defendant's property, real or personal,
used, or intended to be used, in any manner or part, to commit, or to
facilitate the commission of such offense, including but not limited
to the real property located at 1041 South Prairie Avenue #8, and the
firearms and ammunition described in Counts Eleven through Thirteen;
and

          c.    to the extent such property is not available for
forfeiture, a sum of money equal to the total value of the property
described in subparagraphs 1(a) and (b).

2.    Pursuant to Title 21, United States Code, Section 853(p),
each defendant convicted of any of Counts One through Fourteen of
this Indictment shall forfeit substitute property, up to the value of
the total amount described in paragraph 1, if, as the result of any
act or omission of said defendant, the property described in
paragraph 1, or any portion thereof, cannot be located upon the
exercise of due diligence; has been transferred, sold to or deposited

49

1   with a third party; has been placed beyond the jurisdiction of the

2   court; has been substantially diminished in value; or has been

3   commingled with other property that cannot be divided without

4   difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 924(d); 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal
Procedure, notice is hereby given that the United States will seek
forfeiture as part of any sentence, in accordance with Title 18,
United States Code, Section 924(d) and Title 28, United States Code,
Section 2461(c), in the event of any defendant's conviction under any
of Counts Twelve through Sixteen of this Indictment.   Each defendant
so convicted shall forfeit to the United States all firearms and
ammunition involved or used in the commission of such offense(s),
including but not limited to the firearms and ammunition listed in
Counts Twelve through Sixteen.

2.    Pursuant to Title 21, United States Code, Section 853(p),
as incorporated by Title 28, United States Code, Section 2461(c),
each defendant convicted of any of Counts Twelve through Sixteen of
this Indictment shall forfeit substitute property, up to the value of
property described in paragraph 1 if, as the result of any act or
omission of said defendant, the property described in paragraph 1, or
any portion thereof (a) cannot be located upon the exercise of due
diligence; (b) has been transferred, sold to, or deposited with a
third party; (c) has been placed beyond the jurisdiction of the

court; (d) has been substantially diminished in value; or (e) has

been commingled with other property that cannot be divided without

difficulty.


                                        A TRUE BILL


                                        _____/s/_____
                                        Foreperson


NICOLA T. HANNA
United States Attorney


LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

JUSTIN R. RHOADES
Assistant United States Attorney
Chief, Violent & Organized Crime
Section

JOSHUA O. MAUSNER
Assistant United States Attorneys
Violent & Organized Crime Section